**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**CHRISTOPHER ROBERT TAYLOR,**

Plaintiff,

v.                                                        **Civil Action No. 2:15-CV-93**
**(Bailey)**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**,

Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

On this day, the above-styled matter came before this Court for consideration of the

Report and Recommendation of United States Magistrate Judge James E. Seibert [Doc.

14]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge

Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate

Judge Seibert filed his R&R on July 28, 2016, wherein he recommends that the

Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary

Judgment be denied. The plaintiff timely filed Objections to the R&R [Doc. 15] on August

3, 2016. For the reasons set forth below, this Court adopts the R&R.

## I.  BACKGROUND

Plaintiff, Christopher Taylor, filed an application for Title II Disability Insurance

Benefits and Supplemental Security Income under Title XVI on July 1, 2011. [Doc. 7-2 at

12]. His claims were first denied on August 1, 2012, and again upon reconsideration on

October 15, 2012. *Id.* Plaintiff then requested and received a hearing before United States

1

Administrative Law Judge Mary C. Peltzer [hereinafter "ALJ"].  *Id.*  At this hearing, the ALJ found that the plaintiff was not disabled.  Further, she made the following determination of the plaintiff's residual functional capacity

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except: occasional pushing and pulling with the upper extremities; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; and occasional exposure to extreme heat, extreme cold, vibrations, and workplace hazards, such as dangerous moving machinery.  He can perform unskilled work at an SVP 1 or 2 where the work involves things instead of people.

*Id.* at 17.

The plaintiff then sought review in this Court.  [Doc. 1].  Following cross-motions for summary judgment, Magistrate Judge Seibert submitted his R&R [Doc. 14], which provides a detailed discussion regarding the plaintiff's medical history.  Therefore, the undersigned will dispense with the same.  Rather, the undersigned will reference the pertinent records when applicable.

## II.  STANDARD OF REVIEW

When reviewing a Magistrate Judge's proposed findings of fact and recommendations, this Court must make a "*de novo* determination of those portions of the report . . . to which objection is made.  A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Although this Court will review the Magistrate Judge's R&R under a *de novo* standard of review, this Court's review of the underlying ALJ's decision is limited. *See*

*Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The standard for the substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  When analyzing whether the ALJ's decision was supported by substantial evidence, this Court must determine whether the ALJ "consider[ed] all relevant evidence."  *Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 339 (4th Cir. 1997). With these standards in mind, this Court will turn to the objections raised by the plaintiff.

### III. DISCUSSION

When determining whether an individual is disabled, the ALJ is directed to use the following five step process:

i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this

3

section and § 404.1560(b).

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 404.1560(c).

See 20 C.F.R. § 404.1520.

The ALJ is directed to use all relevant medical and other evidence when assessing an individual's RFC. See 20 C.F.R. § 404.1545. This includes evidence from medical examinations, opinions from medical sources, and descriptions and statements from the applicant regarding the applicant's abilities. See id. The Social Security Administration directs the ALJ to consider all medical opinions in its RFC determination. See id. Pursuant to 20 C.F.R. § 404.1527, the ALJ is directed to assess opinions as follows:

*How we consider medical opinions.* In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.

*How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) *Examining relationship.* Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) *Treatment relationship.* Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) *Other factors.* When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. . . .

The ALJ must provide reasoning for the weight he assigned to "all relevant evidence." *See **Gordon v. Schweiker***, 725 F.2d 231, 235 (4th Cir. 1984) (holding that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all the relevant evidence."); *see also* 20 C.F.R. § 404.1520.

The plaintiff asserts two objections to the Magistrate Judge's Report.  The plaintiff asserts that the Magistrate Judge erred by

(1)     Affirming the ALJ's deficient step three finding without considering the availability of probative evidence that obligated the ALJ to engage in a more in depth analysis of whether Taylor's degenerative disc disease of the lumbar spine would meet or equal Listing 1.04; and

(2)     Finding the ALJ adequately explained her RFC assessment in opposition to the requirements of the Commissioner's rules and regulations and applicable Fourth Circuit case law.

In his first Objection, plaintiff asserts the ALJ's discussion of Listing 1.04A was only one paragraph comprised of three sentences that restated the substantial portion of the

listing language and then unilaterally denied the existence of supporting evidence." [Doc. 15 at 3]. The paragraph plaintiff refers to states as follows:

> Subsection 1.04 of the Listings requires that a claimant's impairments cause a disorder of the spine resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. While the evidence shows that the claimant suffers from degenerative disc disease of the cervical and lumbar spine, there is no evidence of nerve root compression accompanied by sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis resulting in pseudolaudication. In the absence of such evidence, no listing-level impairment is found to exist.

[Doc. 7-2 at 15].

Based on this, the plaintiff complains that the ALJ did not provide any analysis of the evidence that did exist in the record and corresponded to the listing requirements. The plaintiff boldly states that "it is truly puzzling how the ALJ" can deny the existence of the following evidence of record: "three MRI's that demonstrated significant spinal canal and neural foramen narrowing and encroachment as well as electromyography and nerve conduction studies that confirmed chronic multilevel radiculopathy . . . [and] treatment notes throughout the record document[ing] sensory deficiencies, positive straight leg raise testing, leg weakness resulting in falls, and symptoms of chronic back and numbness and tingling in the legs." [Doc. 15 at 3].

This Court first notes that the plaintiff simply rehashes his original arguments. Nevertheless, this Court fails to appreciate the importance of the above or how this evidence equates to a 1.04 Listing. More importantly, all of the above evidence which

plaintiff alleges the existence of which was denied is, to the contrary, clearly laid out in the ALJ's decision.  See Doc. 7-2 at 19-21.  It is clear to this Court how the ALJ reached her decision on this point, and her decision is supported by substantial evidence.  The Objection is **OVERRULED**.

Next, the plaintiff asserts that the magistrate judge erred by finding the ALJ's RFC finding is "fully consistent with the state agency consultants' conclusions." [Doc. 15 at 5].  Plaintiff believes that, in recommending that the ALJ did not err "by failing to provide a clear explanation for the RFC limitations he found or rejected, the magistrate judge has taken a very narrow view of the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015), to distinguish Taylor's case."  Id.  Specifically, the plaintiff asserts that the ALJ did not adopt all of the limitations set forth by the two State agency non-examining medical consultants, whose opinions the ALJ purported to give "great weight," and gave no explanation for those limitations she rejected.  For example, plaintiff states that the ALJ filed to explain how she accounted for Taylor's moderate limitations in social functioning and concentration, persistence, or pace, including his ability to interact with others, to stay on task, and to complete a full workday or workweek.

An ALJ must "weigh and evaluate every medical opinion in the record."  *Monroe v. Comm'r of Soc. Sec.*, 2015 WL 4477712, at *7 (N.D. W.Va. July 22, 2015).  However, the ALJ need not explicitly "recount the details of th[e] analysis [of these factors] in the written opinion."  *Fluharty v. Colvin*, 2015 WL 5476145 at *12 (S.D. W.Va. Sept. 17, 2015).  Instead, an ALJ need only "give 'good reasons' in the decision for the weight ultimately allocated to medical source opinions."  *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)).

Additionally, "when denying an application [for benefits], 'the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Fox*, 2015 WL 9204287, at *5 (citing SSR 96-2p).

Plaintiff's reliance upon *Mascio* is misplaced. This Court has previously clarified the holding in that case as such:

> "In *Mascio,* the Fourth Circuit was concerned that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in Mascio's residual functional capacity. The Fourth Circuit noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. In *Mascio,* however, the ALJ gave no explanation [on that issue] whatsoever."

*Hutton v. Colvin*, 2015 WL 3757204 at *3 (N.D. W.Va. June 16, 2015) (*citing* 780 F.3d at 638).

This Court has thoroughly reviewed the ALJ's decision. As the R&R notes, the decision fully explains the weight given to each opinion and accords good reasons for assessing such weight. This Court finds no error.

Contrary to plaintiff's suggestions that *Mascio* and the portions of *Hutton* fit into the

issue at hand, neither of those cases parallel this matter. Here, plaintiff complains the ALJ failed to build a logical bridge between his RFC limitation to "unskilled work at an SVP 1 or 2" and the opinion evidence that Taylor was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff states that "[w]hile Taylor may be able to perform unskilled work at the SVP 1 or 2 level, the ALJ failed to address whether Taylor could sustain that work. This is simply incorrect. After considering all the symptoms and their extent, the ALJ found Taylor to be able to perform work where he can stand or walk for about two hours in an eight-hour work day and sit for about six hours in an eight-hour work day. Accordingly, the ALJ provided substantial evidence in her opinion that the plaintiff's RFC was limited to performing "simple, routine and repetitive instructions and tasks." Unlike the ALJ in *Mascio*, the ALJ here provided substantial reasoning and analysis in forming her conclusion as to plaintiff's RFC. Plaintiff again is simply attempting to rehash arguments already raised and denied. Plaintiff's second objection is also **OVERRULED**.

## IV. CONCLUSION

For the foregoing reasons, this Court is of the opinion that Magistrate Judge Seibert's Report and Recommendations **[Doc. 14]** should be, and is **ADOPTED**. Further, the Plaintiff's Objections **[Doc. 15]** are **OVERRULED**. Therefore, the Defendant's Motion for Summary Judgment **[Doc. 10]** is **GRANTED** and the Plaintiff's Motion for Summary Judgment **[Doc. 13]** is **DENIED**.

Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint

**[Doc. 1]** and **ORDERS** the this matter be **STRICKEN** from the active docket of this Court.

The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 2, 2016.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE